JOSEPHINE CHIRICHELLO, PLAINTIFF-APPELLANT, v. ZONING BOARD OF ADJUSTMENT OF BOROUGH OF MONMOUTH BEACH, DEFENDANT-RESPONDENT.

Argued September 25, 1978—Decided January 22, 1979.

*Mr. Milton M. Breitman* argued the cause for appellant (*Messrs. Levy, Schlesinger and Breitman,* attorneys).

*Mr. William G. Bassler* argued the cause for respondent (*Messrs. Labrecque, Parsons and Bassler,* attorneys).

The opinion of the court was delivered by

SCHREIBER, J. At issue in this case is the propriety of denying a variance from area requirements in a zoning ordinance where the property owner proposes to comply with the ordinance's use restrictions. The proceedings were initiated when plaintiff Josephine Chirichello filed a complaint in lieu of prerogative writ to review the correctness of the denial by the Board of Adjustment of the Borough of Monmouth Beach of her application for a variance to construct a house on an undersized lot. The Superior Court, Law Division, and the Appellate Division affirmed. However, one judge of the Appellate Division dissented and the plaintiff's appeal as of right, *R.* 2:2–1(a), has brought this matter before us.

Though the record is somewhat sparse, the facts adduced at the hearing before the board of adjustment are substantially undisputed. On October 18, 1957 Joseph Chirichello and his wife Josephine, the plaintiff, purchased a lot on Wesley Street in Monmouth Beach. The deed description, which is not by metes and bounds, designated the property by reference to lot 153 on a certain map of Columbus Park, dated October 1925. That lot is now also identified as lot 8 in Block 31K of the borough's tax map.

Lot 8 is located on the north side of Wesley Street. It has a frontage of 53.6 feet and a depth of 118.3 feet on the west and 137.7 feet on its east side. Adjoining lot 8 on the west is lot 9. Lot 9 is on the corner of Wesley Street and Spaulding Place. Its frontage is 53.6 feet, and its sidelines 98.9 feet and 118.3 feet. George West lives in a one-family home located on this tract. He purchased his home in 1951.

Charles Rose owns lot 7 which is adjacent to lot 8 on the east. Its frontage is 53.6 feet and its depth is 87.7 feet on one side and 107.1 feet on the other. Charles Rose purchased his home in 1969. He asserted that his house had been built 20 years before.

Immediately to the east of lot 7 is lot 6. A house also stands on this property which also has a frontage of 53.6 feet.

In December 1957 Mr. and Mrs. Chirichello purchased lots 10 and 11 in Block 31K. These lots front on Spaulding Place and do not face Wesley Street. The south side of lot 10 is adjacent to the rear of Mr. West's property and lot 8. Adjoining lot 10 on the north is lot 11. Both lots 10 and 11 are 100 feet deep. In February 1974 Mr. and Mrs. Chirichello sold lots 10 and 11 to their son Louis.

In 1975 Mrs. Josephine Chirichello (her husband having died) desired to construct a house on lot 8. At that time a Revised Zoning Ordinance, which became effective April 28, 1970, classified the area as A–1 residential. The A–1 zoning restrictions limited usage of the land to single-family homes and required a minimum lot acreage of 9000 square feet, minimum width and depth of 75 feet and 100 feet, respectively, a side yard limitation of 8 feet and a front setback of 25 feet. The plans for the plaintiff's proposed house met all the requirements of the zoning ordinance except that the frontage on Wesley Street was 53.6 feet and not 75 feet and the total area of the lot was 6400 square feet and not 9000 square feet.

The Revised Zoning Ordinance had superseded a Revised Building Zone Ordinance adopted in September 1953. Under

that ordinance the property in question had also been located in a residential zone. However, the minimum lot area was 7500 square feet, although the frontage requirement was the same, 75 feet. The 1953 ordinance indicated that it was a revision of "The Zoning Ordinance of Monmouth Beach, N. J." enacted September 9, 1930, presumably the initial zoning ordinance adopted by the municipality.

Mr. West testified that when he bought his home in 1951, the four separate lots (6, 7, 8 and 9) were in existence. He figured no one would ever want to build a house on lot 8 because it did not have a clear title. He offered the opinion that if Mrs. Chirichello were permitted to build her home there would be four houses within a 200-foot frontage thus creating a fire hazard and a crowded condition. In April 1974, about a year before the proceedings before the board of adjustment were held, Mr. West and Mr. Rose had offered to purchase lot 8 for $5000, but Mr. Chirichello had refused to sell because he thought the land was worth more.

The board of adjustment, after finding the facts substantially the same as recited above, concluded that as a result of construction of the proposed Chirichello house there would be four houses on Wesley Street between Spaulding Place and Bayonne Avenue. This would create a "crowding condition in the existing residential zone which would substantially impair the quality of the residential area, tend to diminish the value of the existing houses in the area, and contribute to creating an unnecessary fire hazard." The board also found that because lots 10, 11 and 8 were at one time in common ownership, thereby merging into one tract upon which a home could have been built, and because plaintiff had received a reasonable offer for lot 8, no exceptional and undue hardship existed. The board concluded the proposed construction could not be accomplished without detriment to other properties in the vicinity and that the variance could not be granted without substantial detriment

to the public good and to the intent and purpose of the zone plan.

The Law Division, relying upon *Loechner v. Campoli*, 49 N. J. 504 (1967), held that when lots 8, 10 and 11 came under common ownership, they became one lot. Therefore the hardship in which plaintiff found herself had been self-created when she sold lots 10 and 11. Furthermore, she had been offered $5000 for lot 8, which was a fair price. Lastly, the trial court held that the plaintiff had made no attempt to demonstrate compliance with the negative criteria of N. J. S. A. 40:55–39, now codified at N. J. S. A. 40:55D–70. Accordingly, it affirmed the board of adjustment's denial of the variance.

The Appellate Division, although noting that the evidence did not support the finding that the $5000 offer was a fair one, an observation with which we agree, affirmed substantially for the other reasons stated by the trial court.

N. J. S. A. 40:55–39(c) authorized a board of adjustment to grant variances where, by reason of some exceptional situation or condition of the property, application of the zoning ordinance would result in peculiar or exceptional practical difficulties to or exceptional and undue hardship upon the property owner. That section read as follows:

The board of adjustment shall have the power to:

\* \* \*

c. Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship; *provided, however*, that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use.

*N. J. S. A.* 40:55–39 also provided that:

No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.

A complete revision of the zoning laws was accomplished by the Municipal Land Use Law, *N. J. S. A.* 40:55D–1 *et seq.,* which became effective August 1, 1976, after this matter had been heard and decided by the board of adjustment. However, virtually the same criteria must be shown to establish a right to a comparable area variance under the new act. *N. J. S. A.* 40:55D–70.

To obtain such a variance, then and now, the applicant must show a physical peculiarity of the property or some other extraordinary or exceptional situation or condition of the land, which due to the zoning ordinance causes the imposition of peculiar and exceptional practical difficulties or undue hardship upon the owner.[1] Although the language would seem to indicate two different standards, difficulties or hardship, the two in large measure are overlapping and complementary. Clearly, peculiar and exceptional practical difficulties may well bear upon the exceptional and undue hardship visited upon the owner of the property. *165 Augusta Street, Inc. v. Collins,* 9 *N. J.* 259, 263 (1952). In addition to these requirements the plaintiff must also demonstrate that, if the variance is granted, no substantial detriment will be inflicted upon the public good and the intent and purpose of the zone plan and ordinance will not be substantially adversely affected. In other words, the variance may be granted only if the spirit of the ordinance and the general welfare are observed.

Normally a property owner has no unusual obstacle in showing that some extraordinary or exceptional situation

---

[1]The new act replaced the word "owner" with "developer."

or condition of the land stands in the path of compliance with the ordinance. In this case the impediments are insufficient frontage and acreage. A more significant element which was determinative here concerned plaintiff's demonstration of undue hardship.

In determining whether undue hardship has been shown, it is always appropriate to consider whether the situation was self-created. For example, if the property had had a 100-foot front on Wesley Street with the same depth and therefore the necessary total area, and the owner sold one-half so that the remaining land did not meet the minimum requirements, we would say the owner created the condition and therefore relief would not be warranted. *Branagan v. Schettino,* 100 *N. J. Super.* 580 (App. Div. 1968). Or, if the owner of a 50-foot-front lot had purchased the adjoining 50-foot lot so that the entire piece was conforming, then the owner would be in the same position as if he had always owned the land with a 100-foot frontage. Upon such an acquisition it may be said absent unusual circumstances that for the purpose of the zoning ordinance there had been a merger and that a later sale of a part of the tract which caused nonconformity would result in a hardship of his own doing. *Cf. Branagan v. Schettino, supra* at 586.

Here, however, no such merger occurred, for the acquisition of lots 10 and 11, lot 10 being located immediately to the rear of lot 8, did not for all purposes of the zoning ordinance create one tract. Even though under common ownership the combined lots had the necessary total area of more than 9000 square feet, the owner could not have built a house on Wesley Street because frontage on that street was less than 75 feet. Under these circumstances it cannot be said that the sale of the two rear lots resulted in such a self-created condition that the landowner was disabled *per se* from an entitlement to a variance. This is not to say that the board may not consider the fact that a landowner failed to capitalize on an acquisition which would have resulted in a situation more compatible with the zoning

ordinance requirements. We cannot discern from this record whether the plaintiff could have retained sufficient additional land from lots 10 and 11 so as to meet the 9000 square foot minimum without reducing the area of those lots below that minimum.

In passing, the trial court observed that Mrs. Chirichello's sale of lots 10 and 11 was unlawful since no subdivision approval had been obtained. The parties did not brief or argue the issue of whether a subdivision was necessary[2] and denial of the variance did not depend on the failure to obtain subdivision appproval. We do not pass on that question except to note that site and subdivision requirements, though intimately related to, are not part of the zoning criteria. *Cf. Mansfield & Swett, Inc. v. West Orange*, 120 *N. J. L.* 145, 149 (Sup. Ct. 1938) (distinction between zoning and planning); 5 *N. Williams, American Planning Law: Land Use and the Police Power* 289 (1975) (criticizing separate handling of subdivision control and zoning). In *Loechner v. Campoli*, 49 *N. J.* 504 (1967), we suggested that planning board approval of a subdivision be sought before the variance application is processed. Under the new Municipal Land Use Law both the board of adjustment and the planning board are empowered to grant the subdivision approval as well as the variance. *N. J. S. A.* 40:55D-76(b) and *N. J. S. A.* 40:55D-60.

Another element to be appraised in determining hardship is whether the property owner bought his land

---

[2]Compare *Loechner v. Campoli*, 49 *N. J.* 504 (1967), where acquisition of adjoining lots fronting on the same street was held to result in one tract so that subdivision approval was required, with 2 *Rathkopf, The Law of Zoning and Planning* § 32.06(2) at 32–16 (4th ed. 1978), where the author wrote:

[T]he general rule that adjoining parcels in one ownership merge so as to constitute only one lot [is not applicable where back to back or "L" shaped lots are involved], since it would require a strained finding that these two lots were intended to form one exceptionally long, narrow plot and would be in total disregard of the fact that each fronts on a different street.

knowing either in fact or constructively, of the disablement. It is now settled that for this purpose the property owner is deemed to stand in the shoes of predecessors in title. *Wilson v. Mountainside,* 42 *N. J.* 426, 452–453 (1964); *Harrington Glen, Inc. v. Leonia Bd. of Adj.,* 52 *N. J.* 22, 28 (1968); *Griffin Const. Corp. v. Teaneck Bd. of Adj.,* 85 *N. J. Super.* 472, 476–477 (App. Div. 1964). If at the time the zoning ordinance requiring a 75-foot front became effective, the land on Wesley Street had already been sold in 50-foot lots to different purchasers, then it would not be possible to say that the initial purchaser of lot 8 had acquired the land with knowledge of a zoning restriction which had not yet been enacted. The facts in this case are unknown. The Chirichello deed indicates that the lots on Wesley Street were laid out in 1925 on a filed map designated Columbus Park. It also appears that the Borough of Monmouth Beach adopted its initial zoning ordinance on September 9, 1930. We do not know what the status of lot 8 on Wesley Street was on that date. Nor has either party placed in the record the 1930 ordinance so that we are unaware of its provisions. We are therefore unable to assess this relevant feature of the case.

Another yardstick by which undue hardship is to be measured is the salability of the land. The adjoining property owners, Messrs. West and Rose, had expressed a willingness to purchase lot 8. An offer of $5000 had been made, but refused because the owner believed the land to be worth more. The record is deficient in that no evidence related the offer to the fair market value of the land. *Cf. Gougeon v. Stone Harbor Bd. of Adj.,* 54 *N. J.* 138, 148 (1969) (mere existence of an offer does not warrant denial of variance). However, Mr. Rose also testified that he would be willing to acquire the lot at whatever fair value figure an appraiser would fix. It would certainly be consonant with the interest of all parties to deny a variance conditioned on the purchase of the land by adjoining property owners at a fair price. The immediate benefit to the adjoining property

owners of maintenance of the zoning scheme and aesthetic enjoyment of surrounding vacant land adjacent to their homes is self-evident. The owner of the odd lot would suffer no monetary damage having received the fair value of the land. Of course, if the owner refused to sell, then he would have no cause for complaint. Or if the adjoining owners would not agree to purchase, then perhaps the variance should be granted, less weight being given to their position particularly when the land in question will have been rendered useless. In either event the use of a conditional variance, the condition bearing an overall reasonable relationship to the purposes of the zoning ordinance, may lead to a satisfactory solution. See *Harrington Glen, Inc. v. Leonia Bd. of Adj., supra; Houdaille Const. Materials, Inc. v. Tewksbury Tp. Bd. of Adj.*, 92 *N. J. Super.* 293 (App. Div. 1966); *Cohen v. Fair Lawn*, 85 *N. J. Super.* 234, 237–238 (App. Div. 1964).

 Hearings before the board of adjustment serve as the focal point for resolution of conflicting interests between public restraints on the use of private property and the owner's right to utilize his land as he wishes. A third interest which frequently makes its appearance is represented by other property owners in the immediate vicinity whose major objective is the more limited self-interest of taking whatever position they believe will enhance the value of their property or coincide with their personal preferences. The board of adjustment must settle these disputes by engaging in a "discretionary weighing," a function inherent in the variance process. *Yahnel v. Jamesburg Bd. of Adj.*, 79 *N. J. Super.* 509, 519 (App. Div.), certif. den. 41 *N. J.* 116 (1963); *Alperin v. Mayor of Middletown Tp.*, 91 *N. J. Super.* 190, 196 (Ch. Div. 1966). Justice Heher characterized the differing positions in the following manner:

[A] "variance" * * * is the means of relief to the individual lot owner where, due to circumstances peculiar to the particular lot, adherence to the zone regulation would constitute interference with

the fundamental right of private property greatly disproportionate to the common good attending the literal enforcement of the general rule, such as would entail hardship unnecessary to the service of the public interest in the exertion of the zoning power, and so would be arbitrary and unreasonable. [*Ward v. Scott,* 16 *N. J.* 16, 24 (1954) (Heher, J., dissenting)]

On the one hand, any variance, at least to the extent that it impinges on the zoning minima, impairs the zoning plan. The extent of the impairment will probably bear some direct relationship to the degree of the impingement. Thus, here the plaintiff proposes to build a one-family home whose design and size will be in keeping with other homes in the area. The required side, rear and front yard setbacks will be met. Furthermore, each of the other three houses on Wesley Street have less total square footage than lot 8. The lot 8 deficiency vis-a-vis the ordinance is limited to an insufficient frontage and yard area—and to that extent the zone plan will be impaired. The overall effect of that impairment, however, is not known for the record does not disclose the perimeters of the area which may be said to be reasonably affected.

On the other hand, the effect of a denial of a variance on the plaintiff property owner may be the enforced inutility of her land. She would then be in the unenviable position of paying taxes on realty which was not and could not be made productive or useful. It is conceivable that such a situation, as distinguished from one where the denial of the variance prevented a more profitable but not every productive use of the land, *Shell Oil Co. v. Shrewsbury Bd. of Adj.,* 64 *N. J.* 334 (1974), rev'g *per curiam* on dissenting o.b. 127 *N. J. Super.* 60 (App. Div. 1973), could constitute an unconstitutional deprivation of property. Justice Francis in *Harrington Glen, Inc. v. Leonia Bd. of Adj.,* 52 *N. J.* 22 (1968), which also involved an application for a variance to construct a home on an undersized lot in a residential zone, cautioned that

[t]he Board must have in mind that if it finds plaintiffs are not entitled to relief, the ordinance will have zoned their property into idleness. Denial of permission to build a home upon the lot deprives it of all productive or beneficial use. The only distinction between such zoning restriction and an actual taking by the municipality is that the restriction leaves the owner with the burden of paying taxes on the property, while the outright taking relieves him of that burden. Ordinarily restraint upon all practical use, such as that which would follow from denial of a variance, is spoken of in terms of confiscation. [*Id.* at 29]

\* \* \*

Obviously some values are enjoyed under implied limitation and must yield to the police power. But the extent of a particular diminution must be considered in determining its propriety. And the cited cases suggest that when diminution reaches a certain degree, certainly when it unreasonably renders the property useless for practical purposes, as by zoning restrictions, an exercise of eminent domain is called for and compensation must be paid. [*Id.* at 33]

See also Justice Hall's comments that zoning which prohibits all reasonable use of property may perhaps not be invalid where important public interests wide in scope and territory as, for example, in the Coastal Wetlands Act, *N. J. S. A.* 13:9A–1 *et seq.*, are applicable. *AMG Associates v. Tp. of Springfield,* 65 *N. J.* 101, 112 n. 4 (1974).

When considering the negative criteria, namely the effect on the public good and impairment of the intent and purpose of the zone plan and zoning ordinance, the parties should direct their attention to that part of the residential area which may reasonably bear on or be affected by the variance. *Gougeon v. Stone Harbor Bd. of Adj.,* 52 *N. J.* 212 (1968); *De Moss v. Watchung,* 137 *N. J. L.* 503 (Sup. Ct. 1948). The instant record discloses the housing situation only for the four lots, including the plaintiff's, on the north side of Wesley Street. Absent is any description of the area even immediately across the street on the south side of Wesley Street. It may be that only the three particular houses on Wesley Street should be considered, but the reasons for even this unlikely event should have been placed in the record.

We have frequently adverted to the conclusory statements and inadequate factual findings of boards of adjustment. Those findings must not be arbitrary or unreasonable. See *Shell Oil Co. v. Shrewsbury Bd. of Adj., supra.* The board found that construction of the proposed house would create an unnecessary fire hazard. Yet, it had before it no competent evidence to support that conclusion. Indeed the proposed location of the house would have satisfied the side yard requirements. The board also found that four houses, including the plaintiff's, each with 50-foot frontages, would create a crowding condition "which would substantially impair the quality of the residential area, [and] tend to diminish the value of the existing houses in the area." Again there was no factual support or adequate explanation in the record for these findings.

The board found that the negative criteria had not been satisfied only because the applicant had not submitted any evidence that the variance could be granted without substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance. However, there was some evidence which bore on these issues. The plaintiff's proposed use of the property as a one-family home is precisely the use required by the zoning ordinance. Further, the compliance with the ordinance's side yard and setback requirements, the style of the house, and its proposed setting among three other homes on smaller tracts with no greater frontages are some indicia that the zone plan and zoning ordinance may not have been substantially impaired by granting the variance. Under these circumstances a statement of the specific findings underlying the determination that the statutory criteria had not been satisfied should have been delineated. See *Gougeon v. Stone Harbor Bd. of Adj., supra,* 52 *N. J.* at 219.

Our cases have made it clear that the applicant for a variance has the responsibility of supplying "competent and credible evidence to apprise the board of the nature and

degree of the zoning burden sought to be alleviated * * *." *Tomko v. Vissers*, 21 *N. J.* 226, 238 (1956). See *Kramer v. Sea Girt Bd. of Adj.*, 80 *N. J. Super.* 454, 460 (Law Div. 1963), aff'd 45 *N. J.* 268 (1965). This responsibility is important not only because it advances the applicant's burden of convincing the board that the variance should be granted, but also because it provides the factual basis needed by the board to produce the kind of record that is required for judicial review. See *Harrington Glen, Inc. v. Leonia Bd. of Adj.*, 52 *N. J.* 22, 27–28 (1968).

The applicant must establish by a fair preponderance of the evidence both the affirmative and negative prerequisites. *Miriam Homes, Inc. v. Perth Amboy Bd. of Adj.*, 156 *N. J. Super.* 456 (App. Div. 1976), aff'd p.c.o.b. 75 *N. J.* 508 (1978). While the ultimate burden of persuasion rests upon the applicant, we have alluded to the balancing of various factors by the board of adjustment in which some circumstances should be given greater weight than others. Some analogy may be drawn from the statement by Justice (then Judge) Hall in *Tullo v. Millburn Tp.*, 54 *N. J. Super.* 483, 496–497 (App. Div. 1959), where, writing with respect to the same negative criteria which are equally applicable to the special exception provision of *N. J. S. A.* 40:55–39(b), he stated:

Each application must be considered in its peculiar factual setting and the *quantum* of proof required will necessarily vary. In any special exception case the statutory criterion of absence of substantial impairment of the intent and purpose of the zone plan and ordinance plays a very small part since the ordinance itself makes the proposed use permissive in the particular zone. The other statutory standard of absence of substantial detriment to the public good must have reference in such a case primarily to the weighing of the admitted general utility of the use and the public convenience of the requested location against the effect of disadvantageous factors on other uses in the area.

See also *Verona, Inc. v. Mayor of West Caldwell*, 49 *N. J.* 274, 283 (1967).

■ Justice Francis in *Harrington Glen, supra,* pointed out that when the residential property is zoned into idleness, "consideration of the utmost fairness must be given to an application for a variance." 52 *N. J.* at 29. We have also adverted to the fact that an impingement of the zoning restrictions may be of varying degrees. The less of an impact, the more likely the restriction is not that vital to valid public interests. Conversely, where the change sought is substantial, the applicant will have to demonstrate more convincingly that the variance will not be contrary to the public good and general welfare expressed in the ordinance.

In summary, then, as to the statutory negative criteria, the record should be developed to describe whatever area the parties believe may be adversely affected by the proposed variance. Any other material and relevant data should be spread on the record for "there is a stern necessity in a case like this one for thorough evaluation of the facts and crystal clear findings" "that the statutory criteria for a variance were not satisfied." *Harrington Glen, supra* at 29, 30. Secondly, as to the undue hardship aspect of the application the record should be developed to disclose the status of the property when the borough's first zoning ordinance became effective and the history, so to speak, of the land in relation to the zoning requirements. Only then may this phase of the application be adequately considered. Lastly, the board should reevaluate and weigh the various relevant factors. It must decide whether a variance of the frontage and area in the setting of this environment is appropriate. In weighing and balancing the elements, the board may consider the propriety of a conditional variance to attain a just and reasonable solution.

The inadequacies of the record and the board of adjustment's findings impel us to remand the matter to the board for further proceedings, the record to be supplemented as the parties and the board deem appropriate consistent with our observations herein.

Reversed and remanded.

Pashman, J., concurring. I concur fully in the opinion of Justice Schreiber speaking for a unanimous Court. I write separately to amplify that portion of our holding dealing with the relationship between an offer to purchase plaintiff's land and the statutory criterion of "undue hardship."

As the majority points out, one factor that may be considered on remand in determining whether denial of a variance will cause plaintiff "undue hardship" is whether third persons have offered to purchase the subject premises at a "fair price." See *ante* at 555–556. *See, e. g., Gougeon v. Stone Harbor Bd. of Adjustment*, 54 *N. J.* 138, 148–149 (1969) (*Gougeon II*); *Gougeon v. Stone Harbor Bd. of Adjustment*, 52 *N. J.* 212, 223–224 (1968) (*Gougeon I*). Caselaw demonstrates unmistakably that the "fairness" of any such offer must be gauged in relation to the fair market value of the premises *assuming that the variance has in fact been granted. See Gougeon I, supra,* 52 *N. J.* at 224. In *Gougeon*, plantiff's lot did not satisfy the minimum area requirements imposed by a local zoning ordinance for constructing a dwelling on the premises. Justice Francis, writing for a unanimous Court, discussed the significance of an offer to purchase the premises as follows:

> Of course, no offer to purchase should play any part in the consideration of the case unless it represents at least the fair market value of a 30′ x 110′ lot *on which a home could be built * * ***.
>
> [*Gougeon I, supra,* 52 *N. J.* at 224 (emphasis supplied)]

It is thus clear that on remand, the fairness of any offer made for plaintiff's land must be judged in terms of the fair market value of her lot assuming a variance has in fact been secured.

Indeed, any other conclusion would be manifestly unjust. Were fair market value determined without assuming the existence of a variance, a plaintiff would rarely, if ever, meet the statutory criterion of "undue hardship." That is, if no use whatsoever can be made of a particular parcel of

property, its "fair market value" would approach zero. Hence, any offer to purchase would effectively negate the existence of "undue hardship." Such a state of affairs would allow adjacent property owners to take advantage of a particular plaintiff's plight inasmuch as only they would be able to put the premises to productive use by merging it with their lands.

Given this additional guideline, I join fully in the majority's opinion.

Justice SCHREIBER joins in this opinion.

*For reversal and remandment*—Chief Justice HUGHES, and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.