**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4573-19

RONALD C. MORGAN and
BARBARA G. MORGAN, h/w,

       Plaintiffs-Appellants,

v.

WEST CAPE MAY COMBINED
ZONING AND PLANNING
BOARD,

       Defendant-Respondent,

and

RONALD E. BAKER,

       Defendant/Intervenor-
       Respondent.

_____

Argued February 9, 2021 – Decided February 24, 2021

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0067-20.

Ronald C. Morgan, appellant, argued the cause pro se.

Richard M. King, Jr., argued the cause for respondent.

Andrew D. Catanese argued the cause for intervenor-respondent (Monzo Catanese Hillegass, P.C., attorneys; Andrew D. Catanese and Kathryn A. Monzo, on the brief).

PER CURIAM

Plaintiffs Ronald and Barbara Morgan (collectively plaintiffs) appeal from the Law Division's July 16, 2020 order dismissing their action in lieu of prerogative writs against defendant West Cape May Combined Zoning and Planning Board (the Board) and defendant-intervenor Ronald Baker (Baker). We affirm.

Baker owns a 12,610 square foot lot in the Borough of West Cape May (Borough). The property is located in the R-1 Urban Residential zoning district, which is intended to be the densest residential district in the Borough. Although lots in this district are only required to be 5000 square feet, most of the lots have less square footage.

Baker filed an application with the Board seeking to subdivide his lot into two lots. Lot A would be 7610 square feet and Lot B would be 5000 square feet. As proposed, Lot B fully complied with all of the Borough's zoning requirements. Lot A has an existing home on it and would require a variance

2

for lot frontage because it would have slightly less than forty-seven feet of frontage while fifty feet is required.[1] Lot A would also require, almost equally, minor variances for lot width and other setbacks.

Plaintiffs live next to proposed Lot B. At the present time, Lot B is mostly landscaped and provides approximately seventy-three feet of separation between plaintiffs' property line and Baker's house on Lot A. A great deal of the landscaping would be removed to make room on Lot B for a residence but, as discussed below, Baker agreed to work with the Borough's arborist to preserve as many mature trees as possible on the new lot.

Baker provided notice of his application to plaintiffs and other nearby residents. He also gave notice to the Borough's Historic Preservation Commission (HPC) and, later, the Board sent a copy of Baker's entire application package to Norm Roach, the HPC's liaison with the Board, who also served as the Borough's zoning officer. Roach attended both of the Board's meetings concerning the application and voiced no opposition to Baker's proposal.

The Board held two public hearings concerning Baker's application. At the first hearing, Baker presented the testimony of Dante Guzzi, an engineer and

---

[1] The total shortage was approximately forty inches.

professional planner.  N.J.S.A. 40:55D-70 authorizes local zoning and planning boards to grant variances from zoning ordinances.  N.J.S.A. 40:55D-70(c) defines two categories of variances:  N.J.S.A. 40:55D-70(c)(1), known as the "hardship variance," and N.J.S.A. 40:55D-70(c)(2), known as the "flexible or bulk variance."  Guzzi testified that the Board could consider and approve Baker's application under both N.J.S.A. 40:55D-70(c)(1) and (c)(2).

By way of background, N.J.S.A. 40:55D-70(c)(1) states:

> The board of adjustment shall have the power to:
>
> (c) (1)  Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship[.]

The above hardship is known as the "positive criteria" required for a (c)(1) variance.  See Jock v. Zoning Bd. of Adjustment of Twp. of Wall, 184 N.J. 562, 575 (2005); Nash v. Bd. of Adjustment of Morris Twp., 96 N.J. 97, 102 (1984).

The applicant bears the burden of establishing that the particular conditions create a hardship. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 29 (2013). Hardship, under (c)(1), "refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise." Jock, 184 N.J. at 590.

Applicants for a variance under (c)(1) must also satisfy the "negative criteria":

> No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> [N.J.S.A. 40:55D-70(d); see also Nash, 96 N.J. at 102.]

A zoning board must balance these negative criteria against the positive criteria. See Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J. Super. 509, 519 (App. Div. 1963).

Guzzi testified that minor variances were needed on proposed Lot A because there was a historic home, built in 1872, on the left side of the property. That residence did not currently meet the side yard and front yard setback requirements because it was built at an angle to the side property line. Because

these deficiencies could not be cured without demolishing and rebuilding the historic home, Guzzi opined that this was a clear hardship under N.J.S.A. 40:55D-70(c)(1) which supported the approval of the variances Baker sought in his application. As discussed below, Guzzi testified there would be no negative impact if the application were granted.

Guzzi also testified that a subdivision of the oversized property could be approved under N.J.S.A. 40:55D-70(c)(2). Our Supreme Court succinctly described the test for granting a (c)(2) variance as follows:

> N.J.S.A. 40:55D-70(c)(2) permits a variance for specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment. The applicant bears the burden of proving both the positive and negative criteria.
>
> [Ten Stary Dom, 216 N.J. at 30.]

Satisfaction of the positive criteria requires "proof that the characteristics of the property present an opportunity to put [it] more in conformity with the development plans and advance the purposes of zoning." Ibid. The purposes of zoning include promoting "public health [and] safety" and a "desirable visual environment"; providing "adequate light, air and open space"; securing "safety from fire, flood, [and] panic"; and providing "sufficient space in appropriate

6

locations for a variety of . . . uses . . . in order to meet the needs of all New Jersey citizens." N.J.S.A. 40:55D-2. As to the negative criteria, the applicant must prove "that the variance would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan." Ten Stary Dom, 216 N.J. at 30.

Significantly, under this "more flexible test[,]" an applicant for a (c)(2) variance need not demonstrate hardship. Price v. Himeji, LLC, 214 N.J. 263, 297 (2013) (citing Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 57 (1999)); Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 470 (App. Div. 2015). In addition, "the magnitude of the deviation from the . . . dimensional requirements of the zoning ordinance and the impact on the zoning plan are often a matter of degree" and, as such, "a board's consideration of a variance should recognize that fact." Ten Stary Dom, 216 N.J. at 32 (citing Chirichello v. Zoning Bd. of Adjustment, 78 N.J. 544, 561 (1979)).

As our Supreme Court explained over thirty years ago:

> By definition . . . no [(c)(2)] variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a [(c)(2)] case, then, will not be on the characteristics of the land

that, in light of current zoning requirements, create a "hardship" on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community.

[Kaufmann v. Planning Bd. for Twp. of Warren, 110 N.J. 551, 563 (1988) (emphasis omitted).]

In short, the granting of a "(c)(2) variance will stand if, after adequate proofs are presented, the Board concludes that the 'harms, if any, are substantially outweighed by the benefits.'" Jacoby, 442 N.J. Super. at 471 (quoting Kaufmann, 110 N.J. at 565).

At the hearing, Guzzi testified that Baker's application satisfied both the positive and negative criteria of N.J.S.A. 40:55D-70(c)(2). As it existed currently, Baker's lot was more than twice the size of most of the other lots on his block. Therefore, Baker's plan to subdivide the large lot into two conforming lots was in keeping with the rest of the properties in the area. In addition, Guzzi found that approximately 40% of the homes on Baker's street had less frontage than required under the zoning ordinance. Thus, Baker's Lot A would not be out of place in the neighborhood. Guzzi also believed that creating two smaller lots would be more consistent with the density requirements of the zone.

As to the negative criteria, Guzzi stated that the benefits of subdivision clearly outweighed any detriments. The deviation requested from the frontage

8

requirement was only forty inches and the other bulk variances sought were due to the pre-existing condition of the property.

Plaintiffs were the only residents who spoke in opposition to Baker's application at the first hearing,[2] but all of their objections were promptly addressed by him. Plaintiffs expressed a concern about the manner in which the proposed new home on Lot B would adversely impact the trees that currently existed on that part of the property. However, Baker agreed to coordinate the placement of the new home with the Borough arborist in order to limit the impact on the more mature trees on the property.

Plaintiffs also thought the new home on Lot B should be constructed further away from their own residence than set forth in the application. Notably, plaintiffs' home was a non-conforming structure located closer to his own lot line than was permitted by the ordinance. In response to plaintiffs' concern, Baker agreed to construct the new home on Lot B ten feet from plaintiff's property line instead of the six feet required by the zoning ordinance.

Plaintiffs also argued that Baker's proposal did not include a plan for parking spaces on Lot A. However, in the interim period between the first and

---

[2] Plaintiffs did not present an expert of their own in opposition to Baker's application.

A-4573-19

second public hearings, Baker amended his application to include sufficient on-site parking spaces.

At the second public hearing, plaintiffs raised new issues. They alleged for the first time that Baker or a prior owner had demolished a "historic structure" on the property at some point in the past without the permission of the HPC or the approval of the Borough's zoning officer. Because of this alleged demolition, plaintiffs argued that the Board lacked jurisdiction to consider Baker's application because it should have first been sent to the HPC for review. In addition, plaintiffs asserted that Baker was required to rebuild the demolished structure in its original condition before the HPC could entertain the matter.

The Board rejected plaintiffs' arguments on this point for several reasons. First, there was no evidence of any "historic structure" on the property other than the residence on Lot A. Indeed, a neighbor testified that the only other "structure" that had been on the property was a ten-by-ten-foot cinder block shed that was used to store gardening equipment. Roach also confirmed there were no accessory buildings shown on any of the historical surveys of the property. Second, N.J.S.A. 40:55D-110 plainly states that a planning board's failure to refer a matter to the municipal HPC "shall not invalidate any hearing or

proceeding." Therefore, the Board clearly had jurisdiction to consider Baker's application.

Third, Baker and the Board gave notice of the application to the HPC and it voiced no objections whatsoever to it, even though Roach, its liaison, attended both of the public hearings. Finally, the Board further rectified the matter by conditioning its approval of Baker's application on the HPC's subsequent review of it.

After considering all of the evidence, the Board voted unanimously to approve Baker's application. In the comprehensive Resolution it issued on January 21, 2020, the Board found that the proposal should be approved under both N.J.S.A. 40:55D-70(c)(1) and (c)(2). As to N.J.S.A. 40:55D-70(c)(1), the Board found that "[t]he side yard and front yard of the existing structure are a hardship given that the historic structure cannot be relocated away from those lot lines."

The Board also found that the application met the positive and negative criteria of both statutes. Because the intent of the zoning plan was to have relatively small lots in the area, Baker's subdivision proposal would make his oversized lot more consistent with the overall nature of the neighborhood. The Board further determined that the benefits of the subdivision outweighed any

11

possible negative impact, especially since Baker addressed each and every one of plaintiffs' objections to the proposal.

As the Board explained:

> The Board does not perceive a negative impact to the neighborhood, nor a determent to the Zone Plan. In fact, these lots are more consistent with the Master Plan than the presently existing large lot (this is not to say large lots are not favorable or do not have a positive impact on the neighborhood, but rather the Board has weighed the minor deviation on lot frontage against requiring the owner to have this large lot in a neighborhood consisting substantially of smaller lots contemplated in the Master Plan). In total, the Board believes the balance is in favor of [Baker] for the reasons above stated, and although acknowledging and respecting the concerns expressed by [plaintiffs], the Board finds in favor of [Baker] on the issues above stated.

Plaintiffs thereafter filed a complaint in the Law Division seeking to reverse the Board's action. After thoroughly canvassing the record and accurately applying the legal principles governing the action in lieu of prerogative writs, the judge dismissed plaintiffs' complaint, holding that the Board's findings and conclusions were supported by the evidence and were not arbitrary, capricious, or unreasonable.

In his oral decision, the judge found that the Board had jurisdiction to consider Baker's application, especially since the Board conditioned its approval

A-4573-19

on the HPC's review of the proposal. The judge also noted that the HPC notified the Board prior to the issuance of the January 21, 2020 Resolution that it had no objection to Baker's application. This appeal followed.

On appeal, plaintiffs raise the following contentions:

I.    THE . . . BOARD LACKED JURISDICTION TO REVIEW AND RULE UPON BAK[E]R'S SUBDIVISION AND VARIANCE APPLICATION DUE TO INADEQUATE AND DEFICIENT PUBLIC HEARING NOTICE.

II.   THE . . . BOARD'S APPROVAL OF BAKER'S APPLICATION IS VOID AB IN[I]TIO AND THE TRIAL COURT'S AFFIRMANCE OF THE DECISION MUST BE REVERSED.

III.  THE INCORRECT INFORMATION AND MISREPRESENTATIONS IN BAKER'S SUBDIVISION PLAN AND ZONING SCHEDULE AFFIXED THERETO NULLIFY THE . . . BOARD['S] APPROVAL.

IV.   THE TRIAL COURT ERRED IN DISREGARDING THE THRESHOLD JURISDICTIONAL ISSUES AND DETERMINING THAT THE . . . BOARD'S SUBDIVISION AND THE GRANT OF VARIANCES IS SUPPORTED BY ADEQUATE PROOFS IN THE RECORD.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552,

13

562 (App. Div. 2004). Thus, our review of the Board's action is limited. Bressman v. Gash, 131 N.J. 517, 529 (1993) (holding that appellate courts are bound by the same scope of review as the Law Division and should defer to the local land-use agency's broad discretion).

In reviewing a municipal zoning board's decision, courts must be mindful that the Legislature vested these boards with the discretion to make decisions that reflect the character and level of development within their municipality. Booth v. Bd. of Adjustment of Rockaway Twp., 50 N.J. 302, 306 (1967). A planning board's discretionary decisions carry a rebuttable presumption of validity. Harvard Enters., Inc. v. Bd. of Adjustment of Madison, 56 N.J. 362, 368 (1970).

It is well-established that "a decision of a zoning board may be set aside only when it is 'arbitrary, capricious or unreasonable.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)). "[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock, 184 N.J. at 597. Therefore, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made

by the board, but to determine whether the board could reasonably have reached its decision on the record." Ibid.

The burden is on the challenging party to overcome this highly deferential standard of review. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). A court must not substitute its own judgment for that of the local board unless there is a clear abuse of discretion. See Cell S., 172 N.J. at 82. As we stated in CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd., 414 N.J. Super. 563, 577 (App. Div. 2010), "[e]ven were we to harbor reservations as to the good judgment of a local land use agency's decision, 'there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.'" (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296-97 (1965)).

Applying these standards, we discern no basis for disturbing the Board's reasoned decision to approve Baker's application for the subdivision of his property and the minor variances he sought as part of his proposal. The Board's decision is clearly supported by sufficient credible evidence in the record and is not arbitrary, capricious, or unreasonable. Plaintiffs' arguments are without sufficient merit to warrant further discussion in a written opinion (R. 2:11-

3(e)(1)(E)), and we affirm substantially for the reasons set forth in the Board's lengthy Resolution and the judge's cogent oral decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4573-19