227 N.J. Super. 574 (1988)
548 A.2d 220
TOUFFIC H. ALLEN AND BARBARA B. ALLEN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
THE HOPEWELL TOWNSHIP ZONING BOARD OF ADJUSTMENT IN THE COUNTY OF MERCER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, JAMES T. PRATER AND M. CHRISTIE PRATER, HIS WIFE, AND DAVID WEEKS, ATTORNEY-IN-FACT FOR HELEN G. WEEKS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 31, 1988.
Decided September 22, 1988.
*576 Before Judges J.H. COLEMAN and O'BRIEN.
Goldshore & Wolf, for appellants (Lewis Goldshore, of counsel, Marsha Wolf and Robert J. Cash, on the brief).
Backes, Waldron & Hill, for respondent The Hopewell Township Zoning Board of Adjustment (Robert C. Billmeier, on the brief).
Stark & Stark, for respondents James T. Prater and M. Christie Prater (Daniel L. Haggerty, III, of counsel, H. John Witman, III, on the brief).
Respondent Helen G. Weeks did not file a brief.
The opinion of the court was delivered by O'BRIEN, J.A.D.
*577 Plaintiffs appeal from a Law Division decision affirming the grant of certain variances to property adjoining theirs and the denial of plaintiffs' application to condition the variances upon plaintiffs' offer to purchase the property in question at its fair market value. We affirm in part and reverse and remand in part.

THE FACTS
In 1951 Henry M. Weeks subdivided a parcel of land owned by him into three lots. The original parcel had 228.52 feet of frontage on Trenton-Pennington Road. A permanent easement was created running along the north side of the property being 28.50 feet in width and running along the north side of the first two newly created lots and terminating at the third lot. The newly created front lot, now Lot 23 in Block 68, has frontage on Trenton-Pennington Road of 200.02 feet and a depth of approximately 230.62 feet, with an area of 1.270 acres plus or minus. The original three-story brick building with a two-car garage on the north side remains on that lot. The garage intrudes 17.50 feet into the easement for a distance of approximately 42 feet.
Immediately behind Lot 23 is a newly created flag lot, now Lot 27 in Block 68, which measures approximately 100 feet by 200 feet with an area of 20,000 square feet and adjoins the easement on its north side. This lot is presently owned by plaintiffs who reside in what was formerly a carriage house. To the rear of this property is the lot in question upon which the variances were granted. This lot is known as Lot 5 in Block 68 and measures 100 feet by 228.50 feet, thus having an area of 22,850 square feet.[1] At the time of the subdivision, the zoning ordinance required a minimum lot area of 20,000 square feet. *578 Some time thereafter this requirement was increased to 40,000 square feet.
At the time of the application under review, Lot 23 was owned by the Dallrymples. Lot 27, being approximately 230 feet from the road with the north side facing on the easement, is owned by plaintiffs. The second flag lot, Lot 5 in Block 68, was owned by Mrs. Weeks.
For some time Mrs. Weeks, through her son David F. Weeks, and plaintiffs had discussed plaintiffs' desire to purchase Lot 5. Mrs. Weeks made it clear to her son that plaintiffs were to have first refusal on the lot. Accordingly, on April 23, 1986 David Weeks notified plaintiffs that he had been approached by a real estate agent who presented an offer on behalf of his daughter and her husband, defendants James T. and M. Christie Prater (Praters), to purchase the lot for $15,000. The offer was contingent upon successful testing for water and septic requirements and obtaining the necessary variances. Weeks gave plaintiffs until May 5 to make an offer, after which time he would assume they did not wish to make an offer. In his letter Mr. Weeks said:
If the land does not pass the necessary tests, or if the buyers are unable to get the necessary permits, then only the abutters will be interested in the lot. Should this happen, I will extend to you again the first refusal privilege.
Plaintiffs concede they did not respond by May 5, but claim that, at a meeting between Weeks and plaintiff prior to Weeks entering into the contract with the Praters, plaintiffs offered to meet the $15,000 offer of the Praters. Although not conditioned on obtaining variances, the offer was conditioned upon an acceptable percolation test. Plaintiffs asked Weeks to obtain the necessary tests although they agreed to pay for them. Since Weeks did not want to go to the trouble of arranging for the tests and considered the Praters' offer the "simplest and clearest" deal, he entered into a contract with the Praters on May 29, 1986 for the sale of the property for a purchase price of $15,000, conditioned upon acceptable percolation tests and necessary zoning and building approvals.

*579 VARIANCES SOUGHT BY THE PRATERS
Thereafter on November 19, 1986 the Praters filed an application for the necessary variances having obtained from the board of health in October 1986 a lot-size variance for construction of the septic system. After an initial hearing on December 2, 1986 when jurisdictional matters were resolved without any testimony being taken, the matter was heard in January and February 1987.
The property is located in the R-100 zone. The minimum requirements of that zone as contrasted with the proposal of the Praters are as follows:

 Minimum for
 R-100 Zone Proposed
 Lot Area 40,000 sq. ft. 22,850 sq. ft.
 Width 150 100
 Lot Depth 200 228 1/2
 Front Setback 75 97
 Lot Width at Street 150 none
 Side Yard 40 35
 Rear Yard 50 97
 Lot Coverage 15% approx. 5%

Ultimately the board of adjustment granted three variances, one for lot area, one for lot width and the other for lot frontage. Although the proposed side yards would only measure 35 feet, the ordinance provided that single-family detached homes may be located any distance from the side lot providing the minimum distance between homes is 40 feet. This proposal met that requirement. The resolution of approval adopted by the board contained findings of fact and conclusions and was passed by a vote of five to one.[2]
*580 Decisions of the board of adjustment are presumed valid and should not be set aside unless arbitrary, capricious or unreasonable. Kessler v. Bowker, 174 N.J. Super. 478, 486 (App.Div. 1979), certif. den. 85 N.J. 99 (1980); see also Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 285 (1965). To receive a variance under N.J.S.A. 40:55D-70(c), applicants must satisfy two criteria: (1) that they will suffer exceptional or undue hardship if the variance is not granted  the so-called positive criteria, and (2) that the variance will not result in a substantial detriment to the public good or the zoning plan  the so-called negative criteria. Nash v. Bd. of Adjust. of Morris Tp., 96 N.J. 97, 102 (1984).
The board granted the Praters' application for variances pursuant to N.J.S.A. 40:55D-70(c)(1), "peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the developers of the property" and not the so-called "flexible c" variance under N.J.S.A. 40:55D-70(c)(2). See Kaufmann v. Planning Bd for Warren Tp., 110 N.J. 551 (1988). In granting the variances, the board of adjustment said:
1. The requested bulk variances are justified under 40:55D-70(c)(1) because exceptional hardship has been shown in that no effective use could be made of this particular isolated "flag lot" if the variances were not granted to permit construction of a single-family residence.
The board noted that the Praters were unable to purchase additional property and that the nonconformity was created by the township in upgrading the zoning requirements. After finding the negative criteria had been established, since a majority of the lots in Block 68 do not conform to the present zoning requirements of the district, the board said:
6. The proposed residence and the traffic generated from it would not cause a safety hazard despite the fact that a common driveway would be used in conjunction with two other residences.
Noting that the board of health had approved the septic system notwithstanding ponding of water on the site, the board said:
9. The perpetual right of way created by deed easement provides the necessary *581 access to this vacant lot from an arterial roadway.[3]
In affirming the decision of the board of adjustment to grant the requested variances, the trial judge said:
Although it is argued that there's nothing unique about the property, it's obviously unique, and, that is, it's undersized. When it was created, it was not undersized. The very nature of the property cries out for relief by a board of adjustment. This is a classic reason why boards of adjustment are created.
Arguably, it might be better land use regulation not to permit flag lots or to require that the easement be paved to its full width of 28 1/2 feet and extended along the north side of Lot 5 to better accommodate emergency vehicles. However, the proper scope of judicial review is not to suggest a decision that may be better than the one made by the board of adjustment, but to determine whether the board could reasonably have reached this decision. Davis Enterprises v. Karpf, 105 N.J. 476, 485 (1987). It was within the province of the board of adjustment to accept or reject the opinions of Dr. David Kinsey, the expert planner, presented by plaintiffs and they chose to reject his opinions. We disagree with plaintiffs that there was insufficient evidence from which the board could reach its conclusion that the negative criteria had been met. We therefore affirm the decision of the Law Division which affirmed the grant by the board of adjustment of the variances requested.

*582 CONDITIONAL VARIANCE REQUESTED BY THE ALLENS
We turn to the denial of plaintiffs' conditional variance request. Plaintiffs applied to condition the variances upon plaintiffs' offer to buy the premises at its fair market value. At the hearing plaintiffs presented testimony that the fair market value of the property was $15,000 in its present condition, but would increase to $22,500 if the variances were approved. The Praters' expert testified the property had a value of $39,500 after approval of the variances. At the time of the board of adjustment hearings, plaintiffs offered to buy the property for $22,500, the fair market value fixed by their expert. The board of adjustment denied the conditional variance request.[4]
The evolution of this developing concept is fully traced in Justice Stein's concurring opinion in Davis Enterprises v. Karpf, supra, 105 N.J. at 488. Since this case does involve an isolated undersize vacant lot, it falls within the doctrine first suggested in Harrington Glen, Inc. v. Municipal Bd. of Adjustment of Leonia, 52 N.J. 22 (1968), through Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, 78 N.J. 544 (1979), and Commons v. Westwood Bd. of Adjustment, 81 N.J. 597 (1980), up to Nash v. Bd. of Adjustment of Morris Tp., supra. The doctrine is described by Justice Pollock for the majority in Davis Enterprises v. Karpf, supra, as follows:
Underlying the request for a hardship variance is the premise that without such relief the property will be zoned into inutility. See Commons v. Westwood Bd. of Adjustment, 81 N.J. 597, 607 (1980). In balancing the interests of the property owner, adjacent owners, and the municipality, a board may impose reasonable conditions on the grant of a variance. Nash v. Bd. of Adjustment of Morris Township, 96 N.J. 97, 105 (1984); 6 P. Rohan, Zoning and Land Use Control, § 43.03(1) at 43-41 (1985). One such condition, described as a conditional variance, `affords the adjoining property owners the opportunity to purchase the property for its fair market value.' Nash v. Bd. of Adjustment of *583 Morris Township, supra, 96 N.J. at 106; see also Chirichello v. Zoning Board of Adjustment of Monmouth Beach, 78 N.J. 544, 555 (1979). (`[i]t would be consonant with the interests of all parties to deny a variance conditioned on the purchase of the land by adjoining owners at a fair price'); Gougeon v. Borough of Stone Harbor, 52 N.J. 212, 224 (1968) (Gougeon I) (a party may `in the discretion of the Board be denied the permission to build his house on condition that' an adjoining property owner makes an offer to purchase the land at a fair market price). A conditional variance recognizes that adjacent owners have a heightened interest in the sale and development of adjoining property and that the underlying purpose of zoning is to encourage the development of property in accordance with relevant land use requirements. See Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra, 78 N.J. at 555-556. Conditioning the grant of a variance on an adjacent owner's offer to purchase prevents the strict application of an ordinance from zoning property into inutility, while avoiding the possible intrusion of substandard lots or structures into a neighborhood. See id. at 556. [Id. 105 N.J. at 481-482.]
It is true, as argued by defendant board, that the court has placed the decision to recognize an offer to purchase at fair market value within the discretion of the board. The Court said:
In its discretion, a board may recognize an offer to purchase the property at fair market value by imposing on the grant of a variance a condition subsequent for the benefit of an adjoining owner. Nash v. Board of Adjustment of Morris Township, supra, 96 N.J. at 102. Alternatively, such an offer, if not accepted, may be viewed as eliminating the hardship thereby leading to the denial of a variance. Id. at 106. Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra, 78 N.J. at 555-556; Gougeon I, supra, 52 N.J. at 224. Which alternative to follow, if either, is a matter that is ultimately committed to the sound discretion of the board. In either event, the offer does not become relevant to the board's decision until the applicant has established that he or she is otherwise entitled to the variance. See Nash v. Bd. of Adjustment of Morris Township, supra, 96 N.J. at 109. [Id. 105 N.J. at 482.]
The Davis Enterprises Court went on to conclude that a fair market value offer to purchase the property by an adjoining owner is a relevant, but not dispositive, consideration in determining whether hardship exists. Ibid. The Court pointed out that in determining whether to grant a hardship variance in the face of such an offer, it was not intended that the existence of such an offer, of itself, would warrant denial of relief. It was intended that such an offer would constitute a circumstance to be considered in the application of the board's statutory discretion to the whole case. An offer to purchase by an adjacent *584 owner authorizes, but does not require, the denial of a hardship variance. Id. 105 N.J. at 483. The Court observed that a conditional variance is "strong medicine" which "subordinates an owner's[5] ability to use his or her property to another's desire to purchase it." [Emphasis supplied.] Id. at 484. Because of this the Court noted it has limited recognition of conditional variances to vacant residential land that requires a variance before the property is useable. Ibid.
In this case, testimony was received as to plaintiffs' continuing desire to purchase the property in question, first, for $2,000, increased to $15,000 to meet the Praters' offer before a contract was signed with them, and finally to $22,500 at the hearing before the board of adjustment, based upon the opinion of their expert as to the value of the property if the variances were approved.[6] The Praters presented evidence through an expert that the value of the property with the variances granted would be $39,500.
In its resolution denying plaintiffs' conditional variance request, the board recited these factual findings:
1. The fair market value of Block 68, Lot 5 as a buildable lot is what a willing buyer will pay to a willing seller.
2. The granting of the requested conditional variance, an equitable remedy, is discretionary with the board and the board determines under the particular circumstances of this request for a conditional variance to deny the requested relief recognizing the parties can negotiate for the purchase of this subject lot without the Board's intervention.
In describing the denial of plaintiffs' requested conditional variance, the trial judge said: "... in effect, the board waffled on this and didn't make a decision." But, ultimately the judge concluded:

*585 ... they made no findings as to its fair market value, and they never really said why they would deny this. But, they thought they had the discretion to deny it, and I agree.
The judge reached this conclusion based upon Davis Enterprises v. Karpf, supra, recognizing the discretion of the board to apply or not to apply this doctrine. The trial judge then observed:
I must admit, I'm slightly puzzled by the board's resolution, since it basically says nothing with regard to the conditional variance. I can't tell what the board really meant to say with regard to that. I don't know if I should remand it back for that. I'd like to hear some argument on that. Tell me what your position is, as the plaintiffs' attorney.
The trial judge was finally persuaded by defendants' arguments and concluded:
And the Board's second finding does, in fact, say that they're attempting to exercise discretion and deny the relief, recognizing the parties can negotiate for the purchase of the subject lot without the Board's intervention.
I have no doubt that the Supreme Court in Davis, and referencing its earlier decision, was just emphasizing the fact that it is not the law of this state that a neighbor can require another neighbor to sell property. And that the evidence of a contract to purchase may be considered by the board for purposes of determining the lack of hardship, or for purposes of applying the doctrine of conditional variance, but it need not do that.
Although we recognize the logic of the trial judge's conclusion, we are more persuaded by his initial observation that the board "waffled" on this application, from which he concluded it might have been appropriate to remand this application to the board for reconsideration. We believe the trial judge should have followed that inclination and remanded the question to the board of adjustment.
In the case first suggesting this doctrine, the applicant, as in this case, was a contract purchaser with the contract conditioned upon approval of the required variances, yet the court spoke of the confiscatory effect upon the owner not the applicant contract purchaser. After noting that a municipality cannot constitutionally restrict the use of an owner's land so as to deprive him of all practical use of it, the Court recognized an obligation to compensate the owner for the loss suffered and *586 then raised the possibility that a fair offer to buy the property could be pertinent to the need for the variance. It said:
There was some indication at the original hearing that a neighbor on Hillside Avenue, the rear of whose premises adjoins the Pou lot, may be interested in adding the Pou land to his holdings. The matter was not pursued. If that neighbor or any other interested person is willing at the time of the renewed hearing to buy Pou's lot at a fair price  for example, at the front foot value of conforming lots in the general residential area  that fact may be considered on the issue of hardship. [Harrington Glen, Inc. v. Municipal Bd of Adjustment of Leonia, 52 N.J. at 31.]
In Commons v. Westwood Zoning Bd of Adj., 81 N.J. 597 (1980), the applicants were the owners of the property although they had contracted to sell the property to a builder on condition that he could construct a one-family residence on the lot. In that case, the Court said:
... Endeavors to sell the property to the adjoining landowners, the negotiations between and among the parties, and the reasonableness of the prices demanded and offered are also relevant considerations. See Gougeon v. Stone Harbor Bd. of Adjustment, 52 N.J. 212, 224 (1968), where it was held that if an owner of land refused to sell at a `fair and reasonable' price he would not be considered to be suffering an `undue hardship.' If on the other hand the owner is willing to sell at a `fair and reasonable' price and the adjoining property owners refuse to make a reasonable offer, then `undue hardship' would exist. [Id. at 606.]
The Court also observed:
There lurks in the background of cases of this type the possibility that denial of a variance will zone the property into inutility so that `an exercise of eminent domain [will be] called for and compensation must be paid.' Harrington Glen, Inc. v. Leonia Bd. of Adjustment, 52 N.J. 22, 33 (1968). When that occurs all the taxpayers in the municipality share the economic burden of achieving the intent and purpose of the zoning scheme. Compared to this result is the denial of a variance conditioned upon the sale of the property at a fair market value to the adjoining property owners. [Id. at 607.]
In noting that the adjoining property owners will receive more direct benefit making it fairer for them to bear the costs, the Court quoted from its decision in Chirichello, supra, as follows:
It would certainly be consonant with the interests of all parties to deny a variance conditioned on the purchase of the land by adjoining property owners at a fair price. The immediate benefit to the adjoining property owners of maintenance of the zoning scheme and aesthetic enjoyment of surrounding vacant land adjacent to their homes is self-evident. The owner of the odd lot *587 would suffer no monetary damage having received the fair value of the land. Of course, if the owner refused to sell, then he would have no cause for complaint. Or if the adjoining owners would not agree to purchase, then perhaps the variance should be granted, less weight being given to their position particularly when the land in question will have been rendered useless. In either event the use of a conditional variance, the condition bearing on an overall reasonable relationship to the purposes of the zoning ordinance, may lead to a satisfactory solution. [Citations omitted.]
Hearings before the board of adjustment serve as the focal point for resolution of conflicting interest between public restraints on the use of private property and the owner's right to utilize his land as he wishes. A third interest which frequently makes its appearance is represented by other property owners in the immediate vicinity whose major objective is the more limited self-interest of taking whatever position they believe will enhance the value of their property or coincide with their personal preferences. The board of adjustment must settle these disputes by engaging in a `discretionary weighing' a function inherent in the variance process. [78 N.J. at 555-556] [Id. 81 N.J. at 607-608.]
In Nash v. Board of Adjustment of Morris Tp., supra, the applicant for the variances were contract purchasers. The purchasers initially agreed to pay $35,000 for the property with no contingency for a variance. However, a second contract superseded the first in which the purchasers' promise to pay was conditioned on their ability to obtain the variances necessary to build a single-family residence on the lot with the purchase price reduced $400 to reflect variance application costs. The contract purchasers agreed to bear any risk of appeal of the variance approval.
In this case, we believe the board of adjustment did not fairly address plaintiffs' offers to purchase the property at its fair market value. In the most recent opinion on the subject, Dallmeyer v. Lacey Tp. Bd. of Adjustment, 219 N.J. Super. 134 (Law Div. 1987) (where plaintiff applicant was a contract purchaser), Judge Serpentelli, after reviewing all of the relevant cases, concluded:
It is to be emphasized that the availability or unavailability of adjacent property or the willingness or unwillingness of the owner to buy or sell are factors the board must consider. They are not necessarily controlling. [Citations omitted.]
Having received evidence concerning offers by plaintiffs to purchase the property and expert testimony as to fair market *588 value, the board made a sincere effort to deal with this very difficult question. They were advised by their attorney:
Your options are number 1 is saying we will not give the Allens a conditional variance, that's the end of it. You can say, we will give you several alternatives, we will give you the right of a conditional variance, but we will not decide what fair market value will be. That's between you people to do, but if, I should say, if you can't decide that within a reasonable time, we're going to tell you what that is. The third alternative in effect is saying, you have a right to a conditional variance and the fair market value is X.
The chairman, in reviewing the motion to deny the conditional variance, said:
We do have a motion, but this is difficult because none of us have dealt with this before. At the risk of repeating it, the equity seems to be served by denying it because, the, Mr. Weeks gets what he agreed to, he agreed to sell it for whatever, I forget, $15,000; the Praters have the land for what they agreed to pay for, and they have their variance granted; and Mr. Allen, Mr. and Mrs. Allen, who want to buy to [sic] the property, have the right, not through us, they just have the right, and they always had the right, to go and negotiate with whoever owns that property to buy it, and they'll set the fair market value, if there is one, by reaching an agreement. In my mind that is the most equitable solution. That leaves me to agree with whoever made the motion to deny, and so, and that is not in conflict with the Nash case, is it?[7]
The resolution of denial was passed by a vote of five to two. It is evident that the board had great difficulty in understanding and applying the evidence as to the Allens' offers to purchase the property at its fair market value as it relates to the existence of a hardship which was the predicate for granting the variances. This is understandable in light of the conclusion of the majority in the Nash case that the fair market value is to be affixed on the property presuming the grant of the variances. This conclusion by the Nash court followed the suggestion in Commons v. Westwood Zoning Board of Adjustment, supra:
We have referred to the fair market value and the fair and reasonable price of the property with respect to considerations of offers to purchase and sell the *589 property as well as the possibility of conditioning the variance. We believe that the preferred method to determine value is on the assumption that a variance had been granted so that a home could be constructed on the lot. See Gougeon v. Stone Harbor Bd. of Adjustment, 52 N.J. at 224, and Chirichello v. Monmouth Beach Zoning Bd. of Adjustment, 78 N.J. at 562 (Pashman, J., concurring). It is possible that other methods of valuation may be feasible. However, the parties have not briefed or argued the issue and accordingly we do not foreclose such possibilities. [81 N.J. at 608.]
The board's attorney wisely observed the difference between this case and the Nash case when he pointed out:
In the Nash case, at the Zoning Board level, it seemed to be, what was different about the Nash case and ours, was the contract price was say, $34,000 and the only expert testimony was that the value of the lot as a buildable lot was $34,000. So basically everyone agreed, the contract ... agreed the experts, this is the value. Unlike our case, we have a contract price which is basically not the value, as you have heard testimony from both experts, is not as a buildable lot, but that really the contract price entered into for $15,000 is the value of the lot as a nonbuildable lot. But, in the Nash case, at the Zoning Board level, people, everyone agreed the lot was worth $34,000; the adjoining neighbors offered $22,000; and the court said, well no, there is such a variance, $10,000 between what the neighbors offering and what the true value is, we, you know, we are not going to give you an opportunity, we don't think you've relieved the hardship, you haven't come up with enough money. They granted the variance. It went up to the trial level and from my reading the case, then when it went to the next level, the Appellate Level, the neighbors said, okay, let me offer you the $34,000, and apparently the court at that point said no, it's too late; they went to the next level, the last level was the Supreme Court, and at the level, in other words, this is where the quote is coming from. When the Justice says, you know, a second chance at this late date, they seemed to be talking not at the Board level, they were talking a couple of years beyond the point.
That is precisely the point. In this case, the Allens' offer to purchase the premises was not initially made in connection with any application for a variance, but admittedly had been proffered over a period of years to the end that Mrs. Weeks insisted that plaintiffs have the opportunity of first refusal. Mrs. Praters' father, the real estate broker, fixed the value of the lot at $15,000 when he made the offer to David Weeks on behalf of the Praters. However, this was conditioned upon the grant of the variances and approval for a septic system and water. Thus, this was the value arrived at between a willing seller and a willing buyer assuming all approvals were obtained.
*590 Plaintiffs agreed to meet the $15,000 price not conditioned on the approval of the variances. However, they foolishly suggested that Mr. Weeks obtain the approvals for the septic system and other municipal approvals for which they agreed to pay. Since Mr. Weeks felt this was too much trouble he accepted the Praters' offer. It is to be noted that in doing so he ran the risk that the hardship variance might be denied, in which event the Praters' offer would terminate, although plaintiffs' offer was not conditioned upon any hardship variances.
It is interesting to note that the Praters, whose real-estate broker father fixed the price of $15,000 as the value of the property assuming the necessary approvals and variances were granted, presented testimony from another real estate broker that the property had a value of $39,500 under the same circumstances. It is obvious, as noted by the board's attorney, that the $15,000 figure was inadequate. Plaintiffs themselves presented testimony from their expert that the property had a value of $22,500 if the variances were granted.
We recognize the extreme difficulty in applying these concepts, but conclude that the Board incorrectly related the hardship to the contract purchasers rather than to the owner. This is understandable in view of the language of N.J.S.A. 40:55D-70c, which refers to hardship to "the developer of such property," the definition of which includes "the holder of a ... contract to purchase ... having an enforceable proprietary interest in such land." N.J.S.A. 40:55D-4. While a contract purchaser has a sufficient interest in the property to entitle him to apply for variances, Trinity Baptist v. Lewis Scott Hold., 219 N.J. Super. 490, 501 (App.Div. 1987), the contract between Weeks and the Praters was conditioned upon approval of the required variances. Thus, the Praters, as conditional contract purchasers, had no "enforceable proprietary interest in the land" until the variances were granted. It is the owner who will suffer the hardship of having her property zoned into inutility if the variances are not granted.
*591 The cases developing the conditional variance concept all refer to the hardship to the owner. While this may include a contract purchaser if the contract is not conditioned upon the approval of the variances, we do not believe that a conditional contract purchaser should be included within the term "owner." The problem is compounded by the statement that the neighbors' offer to purchase the property at its fair market value is not relevant until the variances have been granted. If that were so, the condition in the contract would be met and the contract purchasers would become the equitable owners of the property with an enforceable proprietary interest. However, that is not so. As the Court said in Davis Enterprises v. Karpf:
In either event, the offer does not become relevant to the board's decision until the applicant has established that he or she is otherwise entitled to the variance. [105 N.J. at 482.] [Emphasis supplied.]
We believe the conditional variance doctrine, as developed by our Supreme Court, relates to the hardship to be suffered by the owner of the property and not a contract purchaser where the contract is conditioned upon the approval of the variances. Thus, the board in this case should have considered the Allens' offer as it related to the hardship that would be suffered by Mrs. Weeks, and not the Praters, if the variances were denied.
The board made an effort to consider the equities. It recognized, as do we, that the Praters have gone to the time and expense of obtaining the necessary approvals including the expense of experts to present evidence. However, if the board's decision prevailed and the Allens paid $39,500 for the property (assuming the Praters would accept that price), the Praters would obtain a windfall profit of $24,500 less the cost of their application, their only investment, since if the variances were denied they had no obligation to pay the $15,000. On the other hand, Mrs. Weeks, the property owner, would receive $15,000 for her property, its value before the variances were approved. If the conditional variance was granted Mrs. Weeks would receive $22,500 for the property from plaintiffs or $7,500 *592 more. Under those circumstances, the property would be owned by plaintiffs with the integrity of the zoning ordinance intact, preserving the area in its present state for the benefit of not only plaintiffs but for all the surrounding neighbors. It would also eliminate the existence of an additional flag lot in the area.
The foregoing dissertation is to explain why we remand this matter to the board of adjustment to reconsider plaintiffs' offer to pay the fair market value for the property as it relates to the hardship that will be suffered by Mrs. Weeks (not the Praters) if the variances are denied. Perhaps it has been best stated by Justice O'Hern in his dissenting opinion in Nash v. Board of Adjustment of Morris Tp., when he said:
I disagree that the only means to relieve the owner of an undersized lot from zoning hardship is to force the neighbors to pay the after-the-fact price that the lot will command upon the granting of the variance. By conferring upon the undersized lot the value of a conforming lot the majority's theory reverses the role of the section (c) variance from relieving hardships to conferring windfalls; it lifts the value of the nonconforming lot by its bootstraps; and conflicts with our general views of what constitutes market value in the context of confiscatory zoning. [96 N.J. at 110 (O'Hern dissenting).]
Although the facts in the Nash case perhaps do not clearly reflect that conclusion, this case illustrates it glaringly. It appears to us that the market value of an isolated undersized lot, under contract of sale on condition that the necessary variance are obtained, is the purchase price contained in that contract so that an offer by an adjoining property owner to pay an amount in excess of that contract price should be considered by the board in determining whether the owner will suffer a confiscatory loss if the variances are denied. If Mrs. Weeks is willing to accept $15,000, the value of the property before the variances are granted, she certainly doesn't suffer a hardship if the Allens pay her $22,500 for the property.
The matter is remanded to the board of adjustment for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] There appears to be a portion of property measuring 200 feet in width and 56.19 feet in depth between lot 5 and plaintiffs' lot which is not identified. We assume this portion of land is now a part of plaintiffs' property.
[2] The copy of the resolution provided to us indicates it was passed by a vote of four to nothing. However, the minutes of the meeting of February 4, 1987 indicate the vote was five to one.
[3] Although not specifically stated, we assume these two findings to be a specific finding of practical difficulty or unnecessary hardship pursuant to N.J.S.A. 40:55D-36, which authorizes a variance from the requirements of N.J.S.A. 40:55D-35, where a building or structure is to be erected on a lot that does not abut a street giving access to the proposed building or structure. We assume this to be a finding that the permanent easement running along the north side of Lots 23 and 27 from Trenton-Pennington Road providing access to the property was found to be sufficient for firefighting equipment, ambulances and other emergency vehicles. In the initial approval of the subdivision in 1951, the flag lot in question was created with its only access being the 28 1/2-foot easement which is reduced to 16 feet for a distance of 42 feet to accommodate the two-car garage on Lot 23 in Block 68.
[4] Once more the copy of the resolution contained in the appendix reflects that the conditional variance request was denied by a vote of four to nothing. However, the minutes of the February 4, 1987 meeting reflect that the vote was five to two.
[5] In this case the applicants are contract purchasers under a conditional contract.
[6] Plaintiffs' $15,000 offer was not conditioned on approval of any variances, as was the Praters' offer.
[7] The conclusion by the board of adjustment that notwithstanding their denial of the conditional variance the Allens may still negotiate to purchase the premises from the Praters seems somewhat naive. Since the Praters have the variances, the Allens are against the wall and the Praters can fix the price at whatever amount they wish.