592 A.2d 626

KOGENE BUILDING & DEVELOPMENT CORPORATION, PLAINTIFF–APPELLANT, v. EDISON TOWNSHIP BOARD OF ADJUSTMENT, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 27, 1991—Decided July 11, 1991.

446

Before Judges GAULKIN, HAVEY and SKILLMAN.

*Venezia & Nolan,* attorneys for appellant (*Allen P. Comba,* of counsel and on the brief).

*Kunzman, Coley, Yospin & Bernstein,* attorneys for respondent (*Samuel V. Convery,* Jr. on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Plaintiff appeals from a judgment affirming defendant Edison Township Board of Adjustment's (Board) denial of its application for a hardship variance. We reverse and remand to the Board for further proceedings.

Plaintiff is a builder and contract purchaser of an undersized 50' × 151' lot situated in the R–BB zone under Edison Township's zoning ordinance. The current owner, Judith Elliott, has owned the lot since 1935 when the lot conformed to the then existing bulk standards.

Plaintiff applied to the Board for the following bulk variances in order to construct a residential dwelling on the lot: 10,000 sq. ft. lot area required, 7,500 sq. ft. proposed; 85' lot width required, 50' proposed; 25' total side yard setback required, 22.33' proposed. At the hearing Elliott testified that her daughter attempted in 1970 to purchase an adjoining vacant lot from the township but was rebuffed because sewers were not yet available in the area. Eugene Kowitski, plaintiff's president, stated that he attempted to purchase the lot in January 1989 but did not receive a reply from the adjoining property

owner. He did not inquire about the availability of land on the other side of plaintiff's lot, owned by Carlton and Winsomb Barnes, because their house was only 10' to 18' from the property line.

Samuel Carroll, the owner of the vacant lot adjoining the subject property, testified that he purchased the lot from the township in 1973 and never wished to sell it, but that at some time prior to plaintiff's variance application, he offered to buy the property for $20,000 and was told that the asking price was $68,000. Carroll was unwilling to buy the property at that price. Mr. and Mrs. Barnes, who built their residence on the lot on the other side of plaintiff's lot, stated that they were offered the property for $60,000, but were not interested in buying it, at least "[n]ot for that price."

Plaintiff's expert, Ronald Yaros, a licensed real estate broker, stated that residences in the neighborhood vary in size and value, "ranging from anywhere to about $350,000." He noted that the area was "probably one of the most sought after sections of Edison Township." He also testified that a 6,400 sq. ft. lot in the neighborhood had recently been "approved for a building." It was his view that the subject lot could be developed as proposed without being a detriment to property values in the area. However, several objectors testified that a small house on the substandard lot would be inconsistent with existing dwellings in the area and would reduce property values.

In denying the application, the Board found that plaintiff had failed to show hardship. Specifically, it determined that plaintiff's effort to sell the subject property was "insufficient" and that any offers plaintiff or Elliott had made were "unreasonable." The Board also concluded that there was "adjoining land available ... since both adjoining parcels were purchased from the Township ... and although a recent attempt was made by the contract purchaser there were insufficient attempts made by the present owner." As to the negative criteria, the Board concluded that the requested variances

would have an adverse impact on surrounding property values and would substantially impair the intent and purpose of the zone plan and zoning ordinance. Specifically, the Board noted that the grant of the variances would allow the owners of other vacant 50′ lots in the neighborhood to argue that they were entitled to variances based on the grant of the variances in this case.

The trial court agreed with the Board that plaintiff had failed to show undue hardship because it had not made good faith efforts to either acquire adjoining property or sell the subject property. The court also found that the negative criteria were not satisfied because the variance would set a bad precedent with respect to other undersized lots in the area.

To receive a variance under *N.J.S.A.* 40:55D–70c(1), an applicant must first establish that "exceptional and undue hardship" will result if the variance is not granted (the positive criteria), and that the variance will not result in a substantial detriment to the public good or the zone plan (the negative criteria). Underlying the request for a hardship variance, particularly in an isolated lot case, "is the premise that without such relief the property will be zoned into inutility." *Davis Enters. v. Karpf*, 105 *N.J.* 476, 481, 523 *A.*2d 137 (1987). If it is feasible for the owner of the lot to purchase property from adjoining landowners, or if the owner refuses to sell the lot at a "fair and reasonable" price, the owner might not suffer "undue hardship." *Gougeon v. Board of Adjustment of Borough of Stone Harbor*, 52 *N.J.* 212, 224, 245 *A.*2d 7 (1968).

We recognize the presumption of validity accorded the Board's denial of plaintiff's variance application. *See Kramer v. Board of Adjustment, Sea Girt*, 45 *N.J.* 268, 285, 212 *A.*2d 153 (1965). We also recognize that it is the applicant who bears the burden of proving both the positive and negative criteria under *N.J.S.A.* 40:55D–70c(1). *See Nash v. Board of Adjustment of Township of Morris*, 96 *N.J.* 97, 102, 474 *A.*2d 241 (1984). However, the proofs adduced by the parties, and the

findings made by the Board as to both the positive and negative criteria are, in our view, lacking in several material respects. Thus, a remand for a new hearing is necessary.

As to the negative criteria, the testimony presented by plaintiff and the objectors was at best conclusory. The record does not indicate whether the proposed dwelling would adversely affect the aesthetics and character of the neighborhood, since plaintiff did not submit detailed plans demonstrating the dwelling's compliance with the building code and adequately describing its appearance. *See Commons v. Westwood Zoning Bd. of Adjustment,* 81 *N.J.* 597, 611, 410 *A.*2d 1138 (1980). "[I]f the size and layout of the proposed house would have adversely affected the character of the neighborhood, both with respect to a 'desirable visual environment,' *N.J.S.A.* 40:55D–2(i), and the value of the neighborhood properties, a board may justly conclude that a variance should not be granted." *Id.* at 610, 410 *A.*2d 1138.

As to the positive criteria, the record does not indicate whether the sale of the lot to plaintiff is conditioned upon plaintiff obtaining all necessary variances. Indeed, the agreement between Elliott and plaintiff was never entered into evidence, and thus the record does not disclose the contract price for the property. If the contract is conditional, it is Elliott and not the plaintiff who would suffer the hardship if the variances were not granted, and if Barnes or Carroll offered to purchase the lot for an amount equal to or in excess of the contract price, Elliott would not suffer a hardship. As we noted in *Allen v. Hopewell Tp. Zoning Bd. of Adjustment,* 227 *N.J.Super.* 574, 592, 548 *A.*2d 220 (App.Div.), *certif. denied,* 113 *N.J.* 655, 552 *A.*2d 177 (1988):

It appears to us that the market value of an isolated undersized lot, under contract of sale on condition that the necessary variances are obtained, is the purchase price contained in that contract so that an offer by an adjoining property owner to pay an amount in excess of that contract price should be considered by the board in determining whether the owner will suffer a confiscatory loss if the variances are denied.

Thus, the terms of the agreement between Elliott and plaintiff may be relevant to the Board's resolution of the hardship issue.[1]

Furthermore, neither the applicant nor the objectors presented any evidence regarding the fair market value of the property. Consequently, the Board made no findings on this issue but rather simply concluded that there had been "insufficient attempts to sell the subject property to adjoining land owners" and that any "offer to sell to the adjoining property owners was unreasonable and apparently not negotiable." Absent evidence of the fair market value of the property and a comparison of that value with any offers made by adjoining property owners, the Board could not determine whether plaintiff suffered a hardship. The matter must therefore be remanded so that proof of value may be offered. *See Gougeon v. Board of Adjustment of Borough of Stone Harbor, supra,* 52 *N.J.* at 224, 245 *A.2d* 7.

However, the members of the panel disagree with respect to the approach the Board should follow in determining the fair market value of the property in order to decide whether "exceptional and undue hardship" will result if the variance is denied. Therefore, it is necessary to set forth our views on this issue in some detail.

Our dissenting colleague concludes that even though plaintiff has not yet demonstrated its entitlement to a variance, it should be allowed to value its property as if the variance had already been granted. Thus, according to the dissent's view, if plaintiff's contract to purchase is unconditional, the nonconformity

---

[1] The Board has the option of granting a hardship variance, subject to the adjoining property owner being afforded the opportunity to purchase the lot at its fair market value assuming that all necessary variances have been granted. *Nash v. Board of Adjustment of Township of Morris, supra,* 96 *N.J.* at 107, 474 *A.2d* 241. In any event, the offer would not become relevant unless plaintiff establishes that it is otherwise entitled to a hardship variance. *Davis Enters. v. Karpf, supra,* 105 *N.J.* at 482–83, 523 *A.2d* 137.

of the lot is not self-created and plaintiff satisfies the negative criteria under *N.J.S.A.* 40:55D–70, it would be entitled to a variance unless an adjoining property owner offers to purchase the property at a fair market value determined on the assumption that the variance had already been granted.

However, we are satisfied that a board may properly decide that a property for which a variance is required has a lower fair market value than if the entitlement to a variance has already been established. *Cf. State v. Gorga*, 26 *N.J.* 113, 117, 138 *A.*2d 833 (1958); *see also Inmar Assocs. v. Borough of Carlstadt*, 112 *N.J.* 593, 549 *A.*2d 38 (1988). This approach to the valuation of an undersized lot simply recognizes that any uncertainty regarding a governmental approval required for the development of a property naturally diminishes the value of the property. *State v. Gorga, supra*, 26 *N.J.* at 117, 138 *A.*2d 833. To value property as though a variance has been granted, when in fact it has not, permits the owner to derive the benefits of a hypothetical valuation based on anticipated future governmental action.

The dissent contends that *Commons v. Westwood Zoning Bd. of Adjustment, supra*, 81 *N.J.* 597, 410 *A.*2d 1138 and *Nash v. Board of Adjustment of Township of Morris, supra*, 96 *N.J.* 97, 474 *A.*2d 241, require an undersized lot to be valued as if the variance has been granted in determining whether the property owner has demonstrated the undue hardship required to obtain that variance. The dissent quotes the following passage from *Commons* as a clear statement of the standard for measuring "fair market value":

> We have referred to the fair market value and the fair and reasonable price of the property with respect to considerations of offers to purchase and sell the property as well as the possibility of conditioning the variance. We believe that the preferred method to determine value is on the assumption that a variance had been granted so that a home could be constructed on the lot. [81 *N.J.* at 608, 410 *A.*2d 1138].

However, immediately following the part of *Commons* quoted by the dissent, the Court went on to say:

> It is possible that other methods of valuation may be feasible. However, the parties have not briefed or argued the issue and accordingly we do not foreclose such possibilities. [*Ibid.*]

Thus, the Court in *Commons* expressly disavowed adopting any definitive method of valuation for determining the issue of undue hardship. Furthermore, the Court in *Commons* gave no consideration to whether the method of valuation which should be used to decide whether "exceptional and undue hardship" will result if the variance is denied is different from the method of valuation which should be used to establish the price an adjoining property owner must offer to avoid the grant of the variance once the applicant has satisfied both the positive and negative criteria of *N.J.S.A.* 40:55D–70c(1).

*Nash* did set forth a definitive method of valuation of an undersized lot, but only to establish the price an adjoining property owner must pay the owner of an undersized lot who has already demonstrated his entitlement to a variance and not in connection with the satisfaction of the "hardship" criteria for the grant of a variance. At the very beginning of its opinion in *Nash*, the Court described the issue as follows:

> Specifically, the issue here is, *after there has been a determination that the property owner is entitled to a variance,* what is the proper method of determining the fair and reasonable price for property in a one family residential zone that adjoining property owners must offer the owner to avoid the grant of the variance. [*Id.* at 101, 474 *A.*2d 241 (emphasis added)].

Thus, the applicant's satisfaction of the positive criteria for the grant of a hardship variance was not at issue in *Nash*.

The dissent quotes from a sentence of the Court's opinion in *Nash* which states:

> We hold that the proper standard of valuation in deciding the fair price to be offered to an owner to avoid hardship under *N.J.S.A.* 40:55D–70c is the fair market value of the property assuming that all necessary variances have been granted. [*Id.* at 107, 474 *A.*2d 241].

However, the very next sentence of the opinion clearly indicates that this standard of valuation only governs the price an adjoining property owner must pay to the owner of an undersized lot who has already demonstrated his entitlement to a variance:

We find this to be the only measure of valuation that can truly relieve the hardship of *an owner of an isolated lot who has satisfied the positive and negative criteria of N.J.S.A. 40:55D–70c.* [*Ibid.* (emphasis added)].

The Court in *Nash* also emphasized the limited scope of its holding in responding to the dissent:

The dissent misconceives the essential purpose of the conditional variance. *It fails to recognize that here the applicants have satisfied both the positive and negative criteria of N.J.S.A. 40:55D–70c, thereby establishing their right to a variance.* Thus, in the absence of anything more, the property owner gets the variance. The purpose of this condition is to enable the adjoining property owner to avoid the variance to which the property is entitled. [96 *N.J.* at 106, 474 *A.*2d 241 (emphasis added)].

The Court reiterated the limited scope of its holding in *Nash* in *Davis Enters. v. Karpf, supra,* 105 *N.J.* at 482, 523 *A.*2d 137:

In its discretion, a board may recognize an offer to purchase the property at fair market value by imposing on the grant of a variance a condition subsequent for the benefit of an adjoining owner. *Nash v. Board of Adjustment of Morris Township, supra,* 96 *N.J.* at 102 [474 *A.*2d 241]. Alternatively, such an offer, if not accepted, may be viewed as eliminating the hardship, thereby leading to the denial of the variance. *Id.* at 106 [474 *A.*2d 241]; *Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, supra,* 78 *N.J.* [544] at 555–56 [397 *A.*2d 646]; *Gougeon I, supra,* 52 *N.J.* at 224 [245 *A.*2d 7].... *In either event, the offer does not become relevant to the board's decision until the applicant has established that he or she is otherwise entitled to the variance. See Nash v. Board of Adjustment of Morris Township, supra,* 96 *N.J.* at 109 [474 *A.*2d 241]. [Emphasis added].

If the dissent's expansive reading of *Nash* were correct, it would mean that a board would be required every time the owner of an undersized lot applied for a variance to determine the fair market value of the property assuming the variance had been granted. It also would make satisfaction of the positive criteria for a hardship variance virtually a *pro forma* exercise, since it is unlikely the owners of adjoining properties would be willing, except in unusual circumstances, to purchase an undersized lot for its market value calculated on the assumption that all necessary variances had been granted. Consequently, we accept at face value the *Nash* majority's repeated statements that the requirement that an undersized lot be valued "assuming that all necessary variances have been grant-

ed" only becomes operative after the applicant has satisfied both the positive and negative criteria for a hardship variance.

In *Harrington Glen, Inc. v. Municipal Bd. of Adjustment of Leonia*, 52 *N.J.* 22, 31, 243 *A.*2d 233 (1968), the Court suggested one standard of valuation which may be applied in determining the existence of hardship:

> If ... any other interested person is willing at the time of the renewed hearing to buy [the undersized lot] at a fair price—*for example, at the front-foot value of conforming lots in the general residential area*—that fact may be considered on the issue of hardship [Emphasis added].

This also is the standard of valuation suggested in *Gougeon v. Borough of Stone Harbor, supra*, 52 *N.J.* at 224, 245 *A.*2d 7:

> [N]o offer to purchase should play any part in a consideration of the case unless it represents the fair market value of a 30′ by 110′ lot on which a home could be built, i.e., *at least the front foot value of conforming lots in the general residential area.* [Emphasis added].

This suggested standard is different from the standard established by *Nash* for valuing an undersized lot once the owner has demonstrated his entitlement to a variance, because the front-foot or per acre value of an undersized lot which has received the necessary variances to be used as a building lot will almost invariably be greater than the front-foot or per acre value of a larger conforming lot. *See Nash v. Board of Adjustment of Township of Morris, supra*, 96 *N.J.* at 114, 474 *A.*2d 241 (O'Hern, J., dissenting). Although *Nash* holds that the owner of an undersized lot who has established his right to a variance may not be denied that variance unless an adjoining property is willing to offer such an enhanced value, it does not follow that a property owner may establish the hardship required to obtain a variance by showing that no one will pay him this enhanced value. We are satisfied that the standard of valuation suggested by *Harrington Glen* and *Gougeon* would allow the owner of an undersized lot a fair and reasonable price and preclude a finding of exceptional and undue hardship. It also would preserve a meaningful role for the positive criteria for the grant of a hardship variance and avoid the wholesale

issuance of variances to every owner of an undersized lot who is able to satisfy the negative criteria of *N.J.S.A.* 40:55D–70.

For the foregoing reasons, we reverse and remand to the Board for further proceedings consistent with this opinion.

HAVEY, J.A.D., concurring and dissenting.

I join in the judgment reversing and remanding this matter to the board of adjustment. However, I dissent from that part of the majority's opinion which states that "a board may properly decide that a property for which a variance is required has a lower fair market value than if the entitlement to a variance has already been established." Majority opinion *ante* at 10.

In *Nash v. Board of Adjustment of Tp. of Morris*, 96 *N.J.* 97, 102, 474 *A.*2d 241 (1984), the Court held that when an applicant satisfies the positive and negative criteria under *N.J.S.A.* 40:55D–70c, and is thus entitled to a hardship variance, a board may impose a condition to the variance by giving adjoining owners the option to buy the subject property. The narrow question in *Nash* was what standard applies in determining the property's fair market value. The Court held that the "proper standard of valuation in deciding the fair price to be offered to an owner to avoid hardship ... is the fair market value of the property assuming that all necessary variances have been granted." 96 *N.J.* at 107, 474 *A.*2d 241. Thus, when the positive and negative criteria are satisfied, and a conditional variance is granted, the adjoining property owners must offer to purchase the subject property for its fair market value, assuming the variance has been granted, to defeat the owner-applicant's claim of undue hardship.

As I read *Nash*, the Court accepted the board's determination that the positive criteria had been satisfied because the nonconforming subject lot was isolated, the nonconformity was not self-created and denial of relief would cause the owner to suffer an "unwarranted loss." 96 *N.J.* at 105, 474 *A.*2d 241. Thus, presumably *Nash* presupposed that the positive criteria had

been satisfied because the nonconforming lot was isolated and the hardship was not self-imposed. The Court then spelled out the standard for the granting of a *conditional variance.* Here, on remand, the Board has available the *Nash* option to determine first whether the positive and negative criteria are satisfied and, if so, whether to grant the variance conditioned upon the adjoining property owners offering to purchase the property at fair market value as if the variance had been granted.

However, what has evolved in practice before zoning and planning boards is an alternative approach to the isolated lot case. Instead of establishing fair market value for the purpose of granting a conditional variance, the board, in deciding the threshold question of whether undue hardship exists (the positive criterion), considers whether the owner has offered the lot for sale to the adjoining property owners based on the fair market value of the property assuming that all necessary variances have been granted. *See Dallmeyer v. Lacey Tp. Bd. of Adjustment,* 219 *N.J.Super.* 134, 139, 529 *A.*2d 1063 (Law Div.1987); W. Cox, *New Jersey Zoning and Land Use Administration* § 12–1.3, at 176–78 (1990). If the offer is rejected, "undue hardship" generally exists. *See Dallmeyer,* 291 *N.J.Super.* at 139, 529 *A.*2d 1063.

This approach is entirely consistent with our Supreme Court's holdings in *Commons v. Westwood Zoning Bd. of Adjustment,* 81 *N.J.* 597, 606–08, 410 *A.*2d 1138 (1980); *Chirichello v. Zoning Bd. of Adjustment of Bor. of Monmouth Beach,* 78 *N.J.* 544, 555–56, 397 *A.*2d 646 (1979), and *Gougeon v. Board of Adjustment of Bor. of Stone Harbor,* 52 *N.J.* 212, 222–26, 245 *A.*2d 7 (1968). For example, in *Commons,* the Court held that one of the yardsticks by which undue hardship is to be measured is the owner's willingness to sell the property to adjoining landowners at a "fair and reasonable price" and whether or not the adjoining owners have refused the offer. 81 *N.J.* at 606, 410 *A.*2d 1138. This approach is bottomed on the notion that "denial of a variance will zone the property into inutility so that

'an exercise of eminent domain [will be] ... called for and compensation must be paid.'" *Id.* at 607, 410 *A.*2d 1138 (quoting *Harrington Glen, Inc. v. Leonia Bd. of Adjustment,* 52 *N.J.* 22, 33, 243 *A.*2d 233 (1968)). *Commons* suggested an accommodation between the owner's property right and the adjoining property owner's "direct benefit of the land remaining undeveloped" by *denying* the variance conditioned upon the adjoining owner purchasing the lot "at a fair market value." 81 *N.J.* at 607, 410 *A.*2d 1138. "Undue hardship" would not exist if the adjoining property owners agreed to purchase at such a price. *Id.* at 607–08, 410 *A.*2d 1138.

Upon stating this proposition, *Commons* then clearly sets forth the standard for measuring "fair market value":

> We have referred to the fair market value and the fair and reasonable price of the property with respect to considerations of offers to purchase and sell the property as well as the possibility of conditioning the variance. We believe that the *preferred method* to determine value is on the assumption that *a variance had been granted so that a home could be constructed on the lot.*

*Id.* at 608, 410 *A.*2d 1138 (emphasis added); *see also Chirichello,* 78 *N.J.* at 562, 397 *A.*2d 646 (Pashman, J., concurring) ("fairness" of offer must be gauged in relation to the fair market value of the lot *"assuming that the variance has in fact been granted"*). Therefore, whether the Board takes the *Nash* conditional variance approach, or considers fair market value as part of the threshold undue hardship analysis, as in *Commons,* the result is the same: fair market value must be measured assuming that the variance has been granted.

The majority appears to retreat from this settled rule. While it acknowledges *Nash*'s holding that the proper standard of valuation is the fair market value of the property assuming that all necessary variances have been granted, it seizes upon the caveat in *Nash* that this standard of valuation applies only when the owner has satisfied the positive and negative criteria of the statute. 96 *N.J.* at 107, 474 *A.*2d 241. Thus, it concludes that the *Commons* and *Nash* standard of valuation only governs the price an adjoining property owner must offer to avoid

the grant of a variance when the applicant has satisfied both the positive and negative criteria of the statute.

This approach ignores the fact that *Nash* involved the granting of a conditional variance (where the Court presupposed that the owner had satisfied the positive criteria) and also does not acknowledge the fundamental analysis found in *Commons*, where the fair market value question is part of the undue hardship equation itself; that is, undue hardship may exist if the owner offers the property at a fair market value assuming the variances have been granted, and the offer is rejected.

Instead, the majority concludes that a board "may properly decide that a property for which a variance is required has a lower fair market value than if the entitlement to a variance has already been established." Majority opinion *ante* at 453–54, 592 *A*.2d at 630. It then suggests "one standard" by which the offer price may be based on the front-foot value of a conforming lot, rather than the fair market value of the lot as if the variances had been granted. Thus, according to the majority, in an isolated lot case the owner will not have demonstrated "undue hardship" if the adjoining property owners offer to purchase the subject lot at a price *less than* the fair market value assuming that the variances have been granted.

This reasoning is nothing more than a subtle embracement of Justice O'Hern's dissent in *Nash*, where he observed: "Thus, if a 200–foot building lot would sell for $30,000, it would appear that a 100–foot building lot should be valued at $15,000 for purposes of variance."[1]  96 *N.J.* at 114, 474 *A*.2d 241 (O'Hern, J., dissenting). It may be true that a "buildable" nonconform-

---

[1] The *Nash* dissent's concern about speculators reaping windfalls from the majority's approach has been addressed in *Allen v. Hopewell Tp. Zoning Bd. of Adjustment*, 227 *N.J.Super.* 574, 592, 548 *A*.2d 220 (App.Div.), *certif. denied*, 113 *N.J.* 655, 552 *A*.2d 177 (1988), where we held that when the contract of sale is conditioned upon the variances being granted, the adjoining property owner could defeat the variance by offering the contract price, not the fair market value assuming that the variances were granted.

ing 100–foot lot has less value than a 200–foot conforming lot. However, reducing its price by one-half, as the majority would have it, ignores the inherent value of an undersized lot once it becomes "buildable" as a result of the grant of the variance. In my view, the value of a "buildable" lot must be fixed by the Board after receiving competent expert testimony, rather than application of a judicially-imposed yardstick predicated solely upon front-foot value. Additionally, we are bound by the holding in *Commons* as well as the majority opinion in *Nash,* where the front-foot value approach was expressly rejected. If there is to be a change in the method of valuation in isolated lot cases, it must come from the Supreme Court, and not from us. *See Liptak v. Frank,* 206 *N.J.Super.* 336, 339, 502 *A.*2d 1147 (App.Div.1985), *certif. denied,* 103 *N.J.* 471, 511 *A.*2d 652 (1986). Finally, I concur with the majority's observation in *Nash,* that the dissent's valuation method in that case would vest adjoining property owners and zoning boards with undue power over and discretion as to the value of property.

Accordingly, plaintiff may demonstrate undue hardship if: (1) plaintiff's contract to purchase is unconditional; (2) the nonconformity of the isolated lot is not self-created; (3) he has offered the lot to adjoining property owners at fair market value assuming that the variance has been granted, and (4) the offer has been rejected. If plaintiff meets these criteria, he must then satisfy the negative criteria under *N.J.S.A.* 40:55D–70 to be entitled to the hardship variance.